```
                              FILED
                      CLERK, U.S. DISTRICT COURT

                          JUL 30 2009

                      CENTRAL DISTRICT OF CALIFORNIA
                      BY                      DEPUTY
```

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE FARRIS EZELL, JR.,<br><br>    Petitioner,<br><br>v.<br><br>LEE ANN CHRONES, Warden,<br><br>    Respondent. | NO. CV 06-2959 SVW (FMO)<br><br>**ORDER ADOPTING FINDINGS,<br>CONCLUSIONS AND RECOMMENDATIONS<br>OF UNITED STATES MAGISTRATE JUDGE** |

## INTRODUCTION

On May 15, 2006, petitioner, a California state prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition") pursuant to 28 U.S.C. § 2254. On November 9, 2006, respondent filed her Return to the Petition. On December 26, 2006, petitioner filed a Reply to the Return ("Reply").

On August 4, 2008, the United States Magistrate Judge issued a Report and Recommendation ("R&R"), recommending that the Petition be denied and the action dismissed with prejudice. Thereafter, on August 25, 2008, petitioner filed his "Objection to Report and Recommendation" ("Objections").

## DISCUSSION

In his Objections, petitioner objects to the Magistrate Judge's recommendations as to Grounds 1, 2B, 4 and 6.[1] (See Objections at 2-5, 6-8, 11-15 & 17-20). Grounds 1 and 2B assert

---

[1] Petitioner also objects to Grounds 2A, 2C, 3, 5, 7 and 8. (See Objections at 5-6, 8-11, 15-17 & 20-24). However, petitioner's objections to Grounds 2A, 2C, 3, 5, 7 and 8 are similar to the

that petitioner's trial counsel rendered ineffective assistance because he failed to investigate potential witnesses, including petitioner's co-defendant, Jamar Price ("Price"), and failed to move to suppress petitioner's confession. (See Petition at 5, 8-10 & 12). Ground 4 asserts, inter alia, that the prosecutor committed misconduct by using petitioner's "uncorroborated coerced statements as a calculated weapon against him, compelling him to be a witness against himself when [he] did not testify at trial." (Id. at 17). Ground 6 asserts there was insufficient evidence to support petitioner's conviction for first degree murder. (See id. at 24-28).

Petitioner argues that his confession should have been suppressed because it was "coerced by improper influences employed by Detective[s] Rodriguez, Munoz and Parra." (Objections at 6); (see also id. at 12) ("Throughout the duration of the trial, the prosecutor mislead and misstated factual evidence to jurors, where he mislead them toward petitioner's coerced uncorroborated statements[.]"). Specifically, petitioner contends that "[i]mproper psychological techniques were used by police to induce a statement from petitioner, where threats to his family were made in the context [of] taking his son from his custody, placing him with the Dept. of Children's Services, and the implied promises that he would receive better treatment if he confessed." (Id. at 6-7).

However, there is nothing in the record to support petitioner's assertion that the police made any threats to his family's safety. As discussed in the R&R, (see R&R at 12), during petitioner's trial, the prosecution played an audiotape of petitioner's confession. (See Reporter's Transcript ("RT") at 977). In addition, the jury was provided with a transcript of the interview/confession. (See id.; see also Clerk's Transcript ("CT") at 59-137). Prior to playing the audiotape, Detective Rodriguez acknowledged (in testimony before the jury) that he had "lied to [petitioner] and told him that [he] had more evidence than [he] did." (RT at 972).

During the early stages of petitioner's interrogation, petitioner adamantly claimed that he was at home with his girlfriend and their son on the night of the murder. (See, generally, CT at

---

arguments in his Petition and his Reply, (compare id. with Petition at 5-6, 11-16, 21-23 & 29-43 and Reply at 3-8, 15-18 & 23-29), which are thoroughly addressed in the R&R.

2

69-113). Thereafter, the detectives informed petitioner that his girlfriend had told the police that she was not going to commit perjury:

| | |
|---|---|
| [Officer]: | You know we talked to her this morning, right? |
| [Petitioner]: | Who? |
| [Officer]: | Your old lady with your son. . . . You know we brought her down here? . . . Where do you think she's at right now? . . . |
| [Petitioner]: | She's at home. |
| [Officer]: | We [are] getting ready to talk to her again. She isn't at home. . . . She went home, she made a phone call and she's on her way back. |
| [Petitioner]: | Oh, yeah? |
| [Officer]: | Because you know why? Because you have a son together and she doesn't wanna lose that son. That's the truth, brother. You understand what I'm saying? |
| [Petitioner]: | Uh-huh. |
| [Officer]: | She says "That's all I got, man, I got my son and my man. And my man's going to jail, I want my son." Because otherwise Department of Children Services takes your son. [¶] She goes, "I ain't gonna lie for my man." . . . |
| [Petitioner]: | I wanna – can I talk to her when y'all bring her back? . . . |
| [Officer]: | All right, man, there's no rules out there. You ain't talking to her. You – you tried to talk to her – you tried to feed her as much information this morning until you came outside. You understand what I'm saying? You're feeding her too much. . . . She didn't know what the hell she was talking about this morning. . . . She couldn't get her story straight. And then when we bring you in here, you couldn't even get your story straight, man. Come on. |

\* \* \*

> Something happened out there; we're trying to get your side of the story. Now, if you want me to walk out of here not knowing your side of the [story], that's fine. . . . I get paid whether I stay here and talk to you for two hours or I do not. . . . But you gotta understand something. You got an old lady. You got a baby. And you got an opportunity right now to tell us what happened. Because I'm telling you, you don't know what we found in that car. And I can see on your face you know what I'm talking about.

(CT at 114-16 & 118-19).[2]

Clearly, the police officers were not threatening petitioner but merely summarizing a conversation they allegedly had with his girlfriend, true or not, wherein she refused to perjure herself and risk losing her son in the process. As the R&R concluded,

> petitioner has failed to identify any evidence of police coercion. At most, the police repeatedly exhorted petitioner to confess by lying to him about the evidence they had against him. (See, e.g., CT at 113-16). Neither repeated exhortations to tell the truth nor misrepresenting the evidence constitutes coercion. See Amaya-Ruiz [v. Stewart], 121 F.3d [486,] 494 [(9th Cir. 1997), cert. denied, 522 U.S. 1130, 118 S.Ct. 1083 (1998)].

(R&R at 36-37).

Nevertheless, petitioner contends that his confession was coerced because the trial court acknowledged that his confession was a "scam." (See Objections at 7) ("Also, stated on record by presiding trial judge . . . that it was a 'scam' how Detective Rodriguez used methods of coercion to coax petitioner to succumb to the pressures and confess."). During petitioner's trial, defense counsel sought to introduce evidence from the victim's autopsy report that tests had revealed a .20 blood alcohol level and the presence of P.C.P. (See RT at 1205). The trial court ruled the

---

[2] These are the police officers' only references to petitioner's family in the transcript. (See, generally, CT at 59-137). However, after petitioner confessed, his final comment was "Fucking Twin told on me, man. (Inaudible) she told on me too." (Id. at 137).

evidence admissible, partly because the police officers during petitioner's interrogation had told petitioner that the victim was "intoxicated out of his mind" at the time of his death. (See id. at 1206; see also CT at 125-30). The trial court made this ruling despite the fact that the police officers may have been lying about this "fact" during the police interrogation, stating as follows:

> The tape that [the prosecutor] decided to present shows Detective Rodriguez, albeit a scam, stating that the victim was basically intoxicated out of his mind. . . . In fact, if there is P.C.P. in the victim's blood, it may go to the fact that the victim may have acted in the way Detective Rodriguez stated in his statement to try and get [petitioner] to make a statement. And that would be relevant for that, and I would allow that.

(RT at 1206). Thus, as the R&R concluded, (see R&R at 17), while the trial court acknowledged that the police lied to petitioner, trickery and deceit do not render a confession involuntary.[3] See United States v. Crawford, 372 F.3d 1048, 1060-61 (9th Cir. 2004), cert. denied, 543 U.S. 1057, 125 S.Ct. 863 (2005) ("Trickery, deceit, even impersonation do not render a confession inadmissible, . . . unless government agents make threats or promises.") (internal quotation marks and citation omitted); see also Amaya-Ruiz, 121 F.3d at 495 ("The officers' misrepresentation that a witness had seen [the petitioner] leaving the stolen truck does not amount to coercion.").

Petitioner also argues that he was denied his right to "confront" Price, who petitioner contends was "the only eyewitness who accused petitioner of this crime[.]" (Objections at 2). Specifically, petitioner contends that "Detective Parra testified in behalf of Price['s] statements, where Price['s] confession provides vital mitigating facts which is the crux to petitioner's actual self defense claim." (Id. at 3) (emphasis in original). Without Price's statements, petitioner argues that the evidence was insufficient to convict him of murder. (See id. at 18-19).

---

[3] Because petitioner has not demonstrated that his confession was coerced, counsel's failure to move to suppress his confession does not constitute ineffective assistance. See James v. Borg, 24 F.3d 20, 27 (9th Cir.), cert. denied, 513 U.S. 935, 115 S.Ct. 333 (1994) ("Counsel's failure to make a futile motion does not constitute ineffective assistance of counsel.").

1 | However, contrary to petitioner's claim, (see Objections at 19), Price's out-of-court statements were not admitted at trial. (See, generally, RT at 1-1515). At the <u>preliminary hearing</u>, Detective Parra <u>did</u> testify to various statements made by Price, which implicated petitioner in the crimes. (See CT at 1-39). However, Detective Parra – who petitioner claims was responsible for introducing Price's statements, (see Objections at 2-3) – did not testify at petitioner's trial. (See, generally, RT at 1-1515). In fact, at a <u>sidebar</u> conference among defense counsel, the prosecutor and the trial judge, they agreed that Detective Rodriguez would <u>not</u> make any references during his trial testimony to the statements that Price gave to police. (See RT at 978-80).

Finally, with respect to petitioner's assertion that his counsel was ineffective for failing to call Price as a witness so that he could "confront" Price, (see Petition at 8-9, 11-12 & 15; Reply at 1-2; Objections at 2-4), the record is clear that petitioner did not meet the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). As the R&R noted:

> Petitioner has not offered any proof establishing that Price . . . [was] available and would have been willing to testify at trial. Indeed, because Price participated in the shooting, he had ample reason to invoke his Fifth Amendment right to remain silent. More importantly, petitioner has not demonstrated how Price's . . . testimony would have altered the outcome. Indeed, Los Angeles Police Department Officer Daniel Parra testified at the preliminary hearing that according to Price, [the victim] never pointed a gun at petitioner and petitioner shot [the victim] because of a verbal exchange. Thus, the record demonstrates that petitioner's trial counsel had a sound tactical reason not to call Price as a witness.

(R&R at 35) (internal citations omitted).

## CONCLUSION

Based on the foregoing and pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, all of the records herein, the Report and Recommendation of the United States Magistrate Judge, and the Objections to the Report and Recommendation. The Court has made a <u>de novo</u> determination of the portions of the Report and Recommendation to which Objections

1 | were directed. The Court concurs with and adopts the findings and conclusions of the Magistrate
2 | Judge. Accordingly, IT IS ORDERED THAT:

    1.    Judgment shall be entered dismissing the action with prejudice.

    2.    The Clerk shall serve copies of this Order and the Judgment herein on the parties.

DATED: July 30, 2009.

_____
STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE